Daniel DEEGAN, Appellant,

v.

STATE of Minnesota, Respondent.

No. A05–24.

Supreme Court of Minnesota.

March 23, 2006.

Mark D. Nyvold, St. Paul, MN, for appellant.

Mike Hatch, Attorney General, John S. Garry, Assistant Attorney General, St. Paul, MN, Alan L. Mitchell, St. Louis County Attorney, Duluth, MN, for respondent.

## OPINION

HANSON, Justice.

We review the question of whether Minn.Stat. § 590.05 (2004) violates the United States or Minnesota Constitutions because it provides that a petitioner who pleaded guilty, received no greater than the presumptive sentence, and did not pursue a direct appeal is not entitled to representation by the state public defender in a postconviction petition if the state public defender reviews the case and determines that there is no basis to appeal the conviction or sentence. Specifically, our review focuses on the 2003 amendment to section 590.05, which added the following:

> If, however, the person pled guilty and received a presumptive sentence or a downward departure in sentence, and the state public defender reviewed the person's case and determined that there was no basis for an appeal of the conviction or of the sentence, then the state public defender may decline to represent the person in a postconviction remedy case.

Act of May 28, 2003, ch. 2, art. 3, § 2, 2003 Minn. Laws 1st Spec. Sess. 1400, 1401.

Appellant Daniel Deegan argues that the Minnesota Constitution ensures the right to one appellate review of a criminal conviction—through either a direct appeal or postconviction petition—and that the right to counsel is also constitutionally required because counsel is necessary for the review to be meaningful. In the alternative, Deegan argues that section 590.05 as amended violates the Equal Protection Clause of the United States Constitution because there is no rational basis to provide counsel to indigent postconviction petitioners who either went to trial, or pleaded guilty and received upward departures, but deny counsel to indigent postconviction petitioners who pleaded guilty and received the presumptive sentence or less. The district court and court of appeals held, on the basis of *Pennsylvania v. Finley*, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987), that there is no constitutional right to counsel for a postconviction proceeding. We reverse.

On March 13, 1999, Daniel Deegan, K.B. and S.M. were drinking together at the Red Lion Bar. F.A.W. was also at the Red Lion Bar that night. F.A.W. left the bar with S.M., Deegan and K.B. "to go get high." F.A.W.'s body was discovered the following day at a construction site. Deegan, K.B. and S.M. were each indicted for first-degree premeditated murder and first-degree murder while committing kidnapping. K.B. went to trial and was convicted on both counts.[1] Deegan entered

1. A more comprehensive statement of the facts underlying this case can be found in our

guilty pleas to second-degree murder and kidnapping just before jury selection was to begin in his own trial.[2]

In exchange for his guilty pleas to second-degree murder and kidnapping, Deegan received a 360-month sentence for second-degree murder—a downward durational departure from the presumptive sentence of 386 months. The court did not impose a sentence for kidnapping because the offense was part of the same behavioral incident. Deegan was represented by two public defenders through his guilty pleas on November 28, 2000, and at sentencing.

Deegan did not pursue a direct appeal. In October 2003, Deegan requested the assistance of the state public defender in filing a petition for postconviction relief. The state public defender informed Deegan that counsel would not be appointed. Acting pro se, Deegan filed a petition for postconviction relief along with a motion for appointment of counsel.

After receiving a letter from the state public defender, explaining that the state public defender was declining to represent Deegan because Deegan pleaded guilty and received less than the presumptive sentence, the district court denied Deegan's motion for appointment of counsel on the basis of *Finley*, 481 U.S. at 557, 107 S.Ct. 1990 (holding that there is no Fourteenth Amendment right to counsel for a state postconviction action) and section 590.05. The court also denied Deegan's petition for postconviction relief.

Deegan appealed the denial of his petition to the court of appeals. Deegan filed a motion for the court of appeals to accept his papers "as is," which the court denied. The order denying Deegan's motion to accept nonconforming papers noted that because Deegan had not pursued a direct appeal or previous postconviction petition, "[Deegan's] eligibility for representation by the State Public Defender's Office is unclear." A copy of this order was sent to the state public defender. The state public defender wrote to the court of appeals, providing the same explanation given to the district court: under section 590.05, as amended, Deegan was not entitled to representation by the state public defender. Deegan then filed with the court of appeals a motion for appointment of counsel, a second motion to accept nonconforming appeal papers, and a memorandum explaining his inability to submit papers conforming to the rules of criminal and appellate procedure.[3] The court of appeals granted Deegan's second motion for acceptance of nonconforming appeal papers, but denied his motion for appointed counsel on the same basis as the district court.

 Deegan filed a petition for review of the court of appeals' denial of his motion for appointment of counsel. We granted Deegan's petition to review the constitutionality of the 2003 amendment to section 590.05. We review the constitutionality of a statute de novo. *State v. Benniefield*, 678 N.W.2d 42, 45 (Minn.2004). A person claiming a statute is unconstitutional bears the burden of showing that the statute is unconstitutional beyond a reasonable doubt. *Id.* Unless a fundamental right or suspect class is involved, statutes are presumed to be constitutional. *Id.*

opinion affirming K.B.'s conviction, *State v. Budreau*, 641 N.W.2d 919 (Minn.2002).

2. S.M. also pleaded guilty to second-degree murder and kidnapping.

3. Deegan explained that he was confined to disciplinary segregation where he had no access to a typewriter or word processor, that the prison commissary did not sell $8\text{-}\frac{1}{2} \times 11$ inch paper, and that he could not afford to buy enough paper to submit the required number of copies.

## I.

### A. Minnesota's Postconviction Remedy

We begin our analysis with an overview of the postconviction remedy. The substance of Minnesota's postconviction remedy has been fashioned over the last four decades by judicial decisions that express our understanding of the United States Supreme Court's decision in *Case v. Nebraska*, 381 U.S. 336, 85 S.Ct. 1486, 14 L.Ed.2d 422 (1965), and interpret the Minnesota Postconviction Remedy Act.

In the 1960's, when federal courts were experiencing dramatic increases in habeas filings, the Supreme Court granted certiorari to decide whether the Fourteenth Amendment requires states to provide state prisoners with "some adequate corrective process for the hearing and determination of claims of violation of federal constitutional guarantees." *Case v. Nebraska*, 381 U.S. at 337, 85 S.Ct. 1486; Christopher Flood, *Closing the Circle: Case v. Nebraska and the Future of Habeas Reform*, 27 N.Y.U. Rev. L. & Soc. Change 633, 634 (2001–02). But the Court never issued a decision on the issue for which it granted certiorari because, in the intervening months, the Nebraska legislature enacted a statute providing a state postconviction remedy. *Case*, 381 U.S. at 337, 85 S.Ct. 1486. The Court remanded the matter to the Nebraska Supreme Court for reconsideration in light of the newly enacted statute. *Id.* Because of the procedural posture of that decision, and because subsequent Supreme Court decisions have not revisited the issue directly, it is not clear whether the federal constitution requires states to provide state prisoners with some judicial review processes for claimed violations of the federal constitution.

Lacking clear direction from the Supreme Court, the Minnesota legislature nevertheless enacted the Postconviction Remedy Act in 1967. As originally enacted, this statute provided:

Except at a time when direct appellate relief is available, a person convicted of a crime, who claims that the conviction was obtained, or that the sentence or other disposition made violated his rights under the constitution or laws of the United States or of the state, may commence a proceeding to secure relief therefrom * * *.

Minn.Stat. § 590.01, subd. 1 (1967). Nine years later, we noted that the Postconviction Remedy Act was enacted "as a legislative response to the United States Supreme Court's pronouncement in *Case v. Nebraska*." *State v. Knaffla*, 309 Minn. 246, 251, 243 N.W.2d 737, 740 (1976). We said that the "implication" of *Case v. Nebraska* was that "a convicted defendant is entitled to at least one state corrective process to determine a claim of violation of Federal constitutional rights." *Id.* We also observed that the Postconviction Remedy Act provides broader grounds for relief than is required by *Case v. Nebraska* because the Postconviction Remedy Act provides relief from state law violations in addition to federal and state constitutional violations. *Id.* We concluded that "[t]he salient feature of Minn. St. c. 590 in coordination with *Case v. Nebraska, supra,* is that a convicted defendant is entitled to at least one right of review by an appellate or postconviction court." *Id.* at 251, 243 N.W.2d 737, 243 N.W.2d at 740–41.

In *Knaffla*, we considered the scope of postconviction relief available in Minnesota in two circumstances: where the petitioner did pursue a direct appeal and where the petitioner did not pursue a direct appeal. Where a postconviction petitioner has first taken a direct appeal, we

held that all claims raised—or known but not raised—are barred from further consideration in a postconviction action. *Id.* at 252, 243 N.W.2d at 741.

> Two exceptions to the *Knaffla* rule allow for postconviction relief despite the fact that the claims could have been raised on direct appeal: (1) where a novel legal issue is presented; or (2) where the interests of fairness and justice require relief. To justify a hearing on a novel legal issue, the claim must be so novel that its legal basis was not reasonably available to counsel at the time the direct appeal was taken.

*Powers v. State*, 688 N.W.2d 559, 561 (Minn.2004) (internal citations omitted). "Claims decided in the interests of justice require that the claims have substantive merit," *id.*, and "that the defendant did not deliberately and inexcusably fail to raise the issue on direct appeal," *Fox v. State*, 474 N.W.2d 821, 825 (Minn.1991). Because these exceptions are quite narrow, the grounds for postconviction relief are substantially limited once a direct appeal has been taken.

■ But where a postconviction petitioner did not take a direct appeal from the conviction, but seeks review of a claimed violation of the United States or Minnesota Constitutions or of state law for the first time by a postconviction petition (hereinafter referred to as a "first review by postconviction proceeding"), we held that a postconviction petitioner is entitled to raise nearly the same breadth of claims that could have been brought in a direct appeal, so long as the postconviction claims are in compliance with the procedural requirements of the Postconviction Remedy Act. *Knaffla*, 309 Minn. at 252, 243 N.W.2d at 741. There are no specific limitations in the Postconviction Remedy Act for first review by postconviction proceeding. *See* Minn.Stat. § 590.01–.04 (2004). Thus, a first review by postconviction proceeding is substantially similar in scope to a direct appeal.

Postconviction remedies in other jurisdictions appear to be more limited. In contrast to Minnesota's broad right of review in a first review by postconviction proceeding, in federal postconviction proceedings (section 2255 actions) and in many states' postconviction proceedings, the failure to pursue a direct appeal bars all claims that were known and should have been raised on direct appeal, absent cause for failing to raise the issue previously and resulting prejudice. *E.g., United States v. Pipitone*, 67 F.3d 34, 38–39 (2d Cir.1995) (holding that failure to take a direct appeal bars claims in a section 2255 proceeding that could have been raised on direct appeal); *Worthen v. Meachum*, 842 F.2d 1179, 1181 (10th Cir.1988) ("Under Oklahoma law, post-conviction relief is not available to a defendant who has not perfected a timely direct appeal unless he articulates special circumstances showing 'sufficient reason' for his failure."), *overruled on other grounds by Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Coplen v. State*, 298 Ark. 272, 766 S.W.2d 612, 613 (1989) (holding that when petitioner did not pursue a timely direct appeal, no relief was available because the postconviction remedy is "not meant to be a substitute for direct appeal and is not designed for review of a mere error that occurred at trial"); *Thomas v. State*, 316 N.W.2d 182, 184 (Iowa App.1981) ("[F]ailure to appeal bars relief in a postconviction action as to factual and legal contentions which were known at the time of the original trial court proceeding but which petitioner inexcusably failed to pursue on appeal."); *State v. Osborne*, 329 Mont. 95, 124 P.3d 1085, 1088 (2005) (holding that when petitioner did not pursue direct appeal, postconviction claim was barred because "[t]he plain

language of these provisions establishes that the courts lack any authority to consider * * * or decide * * * legal and factual issues that could reasonably have been raised on direct appeal if an adequate remedy of appeal was available to the petitioner"); *State v. Perry,* 268 Neb. 179, 681 N.W.2d 729, 735 (2004) (holding that when petitioner's direct appeal was dismissed for failure to meet a procedural deadline, "[a] motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal").[4]

Deegan suggests that Minnesota's provision of broad review in a first review by postconviction proceeding derives from the right to at least one review of a criminal conviction that is guaranteed by the Minnesota Constitution. Whatever the federal constitutional requirements may be for postconviction remedies, they do not appear to be as broad as the grounds for relief available in Minnesota for a first review by postconviction proceeding. We infer this conclusion from the longstanding lack of such grounds for relief in federal postconviction proceedings and similar proceedings in other states, and the Supreme Court's pronouncement in *Finley* that "[s]tates have no obligation to provide [postconviction] relief." *Finley,* 481 U.S. at 557, 107 S.Ct. 1990.

◼ It is true that state constitutions are "a font of individual liberties, their protections often extending beyond those required by the Supreme Court's interpretation of federal law." William J. Brennan, Jr., *State Constitutions and the Protection of Individual Rights,* 90 Harv. L.Rev. 489, 491 (1977). As a general rule we favor uniformity with the federal constitution, but our state constitution may in some narrow circumstances provide greater protection for individual rights based on "language, concerns, and traditions unique to Minnesota." *Kahn v. Griffin,* 701 N.W.2d 815, 825 (Minn.2005) (citing *State v. Harris,* 590 N.W.2d 90, 97–98 (Minn. 1999)). Because a first review by postconviction proceeding in Minnesota is substantially similar to a direct appeal, and appears to differ from first review by postconviction proceedings in other jurisdictions, it may well be that the right to one review—through either direct appeal or postconviction proceeding—is a "tradition unique to Minnesota." And because traditions unique to Minnesota may reflect a guarantee in the Minnesota Constitution, the right to one review of a criminal conviction may arguably be grounded in the Minnesota Constitution. But, because the resolution of that question is not necessary to our ultimate holding in this case, we defer until another day the question of whether the right to one review of a criminal conviction, which is recognized in *Knaffla,* is derived from the Minnesota Constitution.[5]

---

4. It is difficult to determine with certainty the breadth of the issues that may be raised in a first review by postconviction proceeding in other states. First review by postconviction proceedings are far less common than postconviction proceedings that follow a direct appeal. Moreover, many opinions holding that issues are barred for failure to raise them in a direct appeal do not specify whether a direct appeal was pursued. *See, e.g., Simmons v. State,* 264 S.C. 417, 215 S.E.2d 883, 885 (1975) ("Errors in a petitioner's trial which could have been reviewed on appeal may not be asserted for the first time, or reasserted, in post-conviction proceedings.") (internal citations omitted).

5. We note, as counter arguments, that we have previously held that the right to pursue a *direct appeal* of a criminal conviction is not required by the Minnesota Constitution. *Spann v. State,* 704 N.W.2d 486, 491 (Minn. 2005). Moreover, our decision in *Knaffla* referenced the Postconviction Remedy Act and our understanding of the requirements of

## B. The Right to Counsel under the United States Constitution

Deegan argues that Minnesota's first review by postconviction proceeding is more akin to a direct appeal as of right than to other postconviction proceedings. This argument suggests that a Minnesota petitioner, proceeding on a first review by postconviction proceeding, may be entitled, under the United States Constitution, to the same right to counsel afforded to defendants on direct appeal as of right.

■■■■■ Deegan acknowledges that there is no right to counsel in "collateral review" proceedings under the Equal Protection or Due Process Clauses of the United States Constitution. *Finley,* 481 U.S. at 555–57, 107 S.Ct. 1990. In *Finley,* the Court held that the right to counsel in state proceedings "extends to the first appeal of right, and no further." *Id.* at 555, 107 S.Ct. 1990. The Court's rationale for guaranteeing the right to counsel in a first appeal of right but not in a "collateral review," postconviction petition is that (1) postconviction proceedings are even more removed from trial than direct discretionary review, for which the right to counsel is not guaranteed, (2) postconviction proceedings are considered civil in nature, (3) states are not required to provide postconviction remedies, and (4) when states do provide this remedy, the Due Process Clause does not require the provision of counsel as well. *Finley,* 481 U.S. at 556–57, 107 S.Ct. 1990. Deegan contends that in Minnesota, a first review by postconviction proceeding is not a "collateral review," as described in *Finley,* but is similar to a direct appeal and should be governed by the decision of the Supreme Court in *Douglas v. California,* 372 U.S. 353, 357–58, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). In *Douglas,* the Court reasoned that absent a constitutional right to counsel in an appeal as of right, indigent appellants would not have the same access to counsel as appellants with the financial means to retain private counsel. *Douglas,* 372 U.S. at 355, 83 S.Ct. 814. The *Douglas* Court concluded that "where the merits of *the one and only appeal* an indigent has as of right are decided without benefit of counsel, we think an unconstitutional line has been drawn between rich and poor." *Id.* at 357, 83 S.Ct. 814 (emphasis added).

Although *Douglas* was expressly limited to a direct appeal, *id.* at 356, 83 S.Ct. 814 ("We are dealing only with the first appeal, granted as a matter of right to rich and poor alike * * *."), it may well be that the Supreme Court would extend the rationale of *Douglas* to hold that Minnesota's unique procedure for first review by postconviction proceeding qualifies as a "direct appeal as of right" under *Finley* and *Douglas.* This conclusion finds some support in the Supreme Court's recent decision in *Halbert v. Michigan,* —— U.S. ——, 125 S.Ct. 2582, 162 L.Ed.2d 552 (2005). In *Halbert,* the Court held that the Due Process and Equal Protection Clauses of the United States Constitution require appointment of counsel for indigent defendants seeking leave to obtain first tier, error-correcting review in the Michigan Court of Appeals, even though the first-tier appeal is discretionary, not as of right. *Id.* at 2592. Under *Knaffla,* Deegan's right to review is greater than the defendant's right in *Halbert* because it is as of right, not discretionary.

Ultimately, we are hesitant to predict how the Supreme Court would view Minnesota's postconviction remedy in the context of a first review by postconviction proceeding. Accordingly, we defer the question of whether the United States Constitution guarantees the right to coun-

*Case v. Nebraska,* but not the Minnesota Constitution. stitution.

sel for an indigent defendant's first review by postconviction proceeding in Minnesota.

### C. The Right to Counsel under the Minnesota Constitution

We next address whether the Minnesota Constitution guarantees the right to counsel for a first review by postconviction proceeding, irrespective of whether this right to counsel is protected by the United States Constitution. Although we have not determined whether the right to one review in a first review by postconviction proceeding is guaranteed by the Minnesota Constitution, this is not a prerequisite to a constitutional guarantee of the right to counsel in that proceeding. As we have seen in *Douglas* and *Halbert*, the right to counsel on appeal may be constitutionally guaranteed even where the right to appellate review is not. *See Douglas*, 372 U.S. at 355–56, 83 S.Ct. 814; *Halbert*, 125 S.Ct. at 2586–87. Having determined by examination of Minnesota statutes and case law that a criminal defendant in Minnesota has the right to one review of his or her conviction, the question before us is whether the Minnesota Constitution requires the assistance of counsel to make that one review meaningful.

Until 2003, a defendant seeking a first review by postconviction proceeding was provided the assistance of counsel by section 590.05. And the right to counsel in a direct appeal as of right has always been grounded in the United States Constitution. *See Douglas*, 372 U.S. at 357–58, 83 S.Ct. 814 (citing U.S. Const. amend. XIV). Thus, we have not previously needed to answer the question of whether the right to counsel for one review is required by our state constitution.

Section 590.05 was originally enacted in 1967 as part of the Postconviction Remedy Act. For over two decades, this statute provided representation by the state public defender for all postconviction petitioners who were financially unable to obtain counsel. Minn.Stat. § 590.05 (1990). A 1991 amendment excluded the appointment of counsel to petitioners who had already had a direct appeal. Act of June 4, 1991, ch. 345, art. 3, § 1, 1991 Minn. Laws 2575, 2684. The 2003 amendment, the one at issue in this case, further restricted representation by the state public defender of a subset of postconviction petitioners who had not pursued a direct appeal: those who had pleaded guilty and received no greater than the presumptive sentence. Act of May 28, 2003, ch. 2, art. 3, § 2, 2003 Minn. Laws 1st Spec. Sess. 1400, 1401. The 1991 amendment continued the assurance that a defendant would have assistance of counsel for at least one review. The 2003 amendment eliminates that assurance for a subset of postconviction petitioners.

We have previously demonstrated a willingness to interpret the right to counsel under the Minnesota Constitution independently of the United States Constitution. In *Friedman v. Commissioner of Public Safety* we held that "because of Minnesota's lengthy and historic recognition of human rights, human dignity, and the procedural protection for the rights of the criminally accused," implied consent procedures are a critical stage of criminal proceedings to which the right to counsel attaches. 473 N.W.2d 828, 836 (Minn. 1991) (citing Minn. Const. art. I, § 6 ("The accused shall enjoy the right * * * to have the assistance of counsel in his defense.")). And in *State v. Risk* we held that because Minnesota has a "long tradition of assuring the right to counsel," the Minnesota Constitution requires police to cease interrogating an accused who has made an ambiguous or equivocal statement that could be construed as invoking the right to counsel. 598 N.W.2d 642,

648–49 (Minn.1999). Although these cases address the right to counsel for defendants during the investigative stages of a criminal proceeding, which are not at issue here, they demonstrate our view, under the Minnesota Constitution, that a defendant's access to the other protections afforded in criminal proceedings cannot be meaningful without the assistance of counsel.

■ We are also persuaded by the rationale underlying the Supreme Court's *Douglas* decision that the quality of a defendant's one review as of right of a criminal conviction should not hinge on whether a person can pay for the assistance of counsel. *Douglas*, 372 U.S. at 355–56, 83 S.Ct. 814. As the Court noted, "[t]he indigent, where the record is unclear or the errors are hidden, has only the right to a meaningless ritual, while the rich man has a meaningful appeal." *Douglas*, 372 U.S. at 358, 83 S.Ct. 814. Although we recognize the salutary purpose of the 2003 amendment—to direct the limited public defender resources to the cases that will likely present the greatest need—we nevertheless conclude that the 2003 amendment deprives some defendants of meaningful access to one review of a criminal conviction, in violation of their right to the assistance of counsel under Article I, section 6 of the Minnesota Constitution. We hold that a defendant's right to the assistance of counsel under Article I, section 6 of the Minnesota Constitution extends to one review of a criminal conviction, whether by direct appeal or a first review by postconviction proceeding. We therefore hold that section 590.05, as amended by Act of May 28, 2003, ch. 2, art. 3, § 2, 2003 Minn. Laws 1st Spec. Sess. 1400, 1401, is unconstitutional.[6]

## II.

■ Having determined that section 590.05 as amended in 2003 is unconstitutional, we turn to the question of the appropriate remedy. When a court determines that a law is unconstitutional, it must invalidate only as much of the law as is necessary to eliminate the unconstitutionality. *State v. Shattuck*, 704 N.W.2d 131, 143 (Minn.2005) (citing *Chapman v. Comm'r of Revenue*, 651 N.W.2d 825, 836 (Minn.2002)). Minnesota Statutes § 645.20 (2004) provides that a court may sever any unconstitutional provision from a statute and leave the remaining language intact, unless the legislature has specified that the provision is not severable or it is apparent that the legislature would not have enacted the remaining provisions without those that are to be severed. *See also Chapman*, 651 N.W.2d at 835–36.

■ We have previously held that if an amendment is unconstitutional, only the amendment is severed and any previous version found constitutional remains in full force and effect. *Fedziuk v. Comm'r of Pub. Safety*, 696 N.W.2d 340, 349 (Minn. 2005). There is no constitutional challenge to section 590.05 as it existed before the 2003 amendment. We hold that the 2003 amendment to Minn.Stat. § 590.05 (2004) is severed and the version that existed immediately prior to the 2003 amendment is revived.

Accordingly, we reverse the decision of the court of appeals denying Deegan's motion for the appointment of counsel and remand to the district court for appoint-

---

**6.** We do not reach Deegan's argument that Minn.Stat. § 590.05 violates the federal or state Equal Protection Clauses because there is no rational basis to provide counsel to indigent postconviction petitioners who either went to trial, or pleaded guilty and received upward departures, but deny counsel to indigent postconviction petitioners who pleaded guilty and received the presumptive sentence or less.

ment of counsel and postconviction proceedings consistent with this opinion.

Reversed and remanded.

GILDEA, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

ANDERSON, G. Barry, Justice (dissenting).

The majority strikes down Minn.Stat. § 590.05 (2004) on the basis that Article I, § 6 of the Minnesota Constitution guarantees a convicted defendant appointed counsel on a petition for postconviction relief when that petition is the first review of the conviction. Because I do not read the Minnesota Constitution to include this right, I respectfully dissent.

As the majority notes, when interpreting our state constitution, we generally favor uniformity with the federal constitution and do not independently apply the Minnesota Constitution absent "language, concerns, and traditions unique to Minnesota." *Kahn v. Griffin*, 701 N.W.2d 815, 824 (Minn.2005). Because the "tradition" of providing counsel on postconviction review—and indeed of providing "a right to one review" when a petitioner has not taken a direct appeal—is of statutory origin, the right to counsel on a postconviction petition does not meet this stringent standard.

As acknowledged by the majority, Minnesota's history of providing appointed counsel to postconviction petitioners who have not pursued a direct appeal has always been based on statute. In addition, while the majority states that "the right to one review of a criminal conviction may arguably be grounded in the Minnesota Constitution," there is strong evidence that the right to appeal is itself statutory. This court recently stated that "a convicted de-

fendant does not have a constitutional right to appeal under either the United States Constitution or Minnesota Constitution." *Spann v. State*, 704 N.W.2d 486, 491 (Minn.2005). While "a convicted defendant is entitled to at least one right of review by an appellate or postconviction court," *State v. Knaffla*, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976), the majority acknowledges that *Knaffla*, while it interpreted the Postconviction Remedy Act, did not reference the Minnesota Constitution.

Looking beyond these statutory guarantees, there is little additional basis for the conclusion that the Minnesota Constitution guarantees the right the majority finds today. The majority reads our prior decisions in *Friedman v. Commissioner of Public Safety*, 473 N.W.2d 828 (Minn. 1991), and *State v. Risk*, 598 N.W.2d 642 (Minn.1999), as support for the view that "a defendant's access to the other protections afforded in criminal proceedings cannot be meaningful without the assistance of counsel." While this may be true as a matter of policy, I do not agree that these two decisions, which the majority acknowledges dealt with investigative stages of criminal proceedings, create a "tradition" warranting reading the Minnesota Constitution to guarantee the right to counsel in a postconviction proceeding.

Finally, the majority finds support for its holding in the reasoning of *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). As the majority notes, however, *Douglas* dealt with appointment of counsel on *direct appeal*—a factor that appears to have been significant in the Supreme Court's decision. *See id.* at 356–57, 83 S.Ct. 814 ("But where the merits of *the one and only appeal an indigent has as of right* are decided without benefit of counsel, we think an unconstitutional line has been drawn between

rich and poor.") (emphasis added). The case before this court today does not involve a situation in which a defendant is forced to undertake his *only appeal as of right* without the benefit of counsel. Deegan had the opportunity to appeal his conviction and sentence with the benefit of counsel via a direct appeal, an opportunity he chose not to pursue.

As a matter of policy, there is more than a little room to criticize the legislative decision to give the public defender discretion to decline representation to defendants in the procedural posture found here. The number of defendants affected by this amendment is small, the budgetary import insignificant, and the importance of counsel in an effective appeal is obvious.

But neither traditions based in statute nor poor policy choices by the legislature are sufficient to make an entitlement to counsel constitutionally mandated. Accordingly, I respectfully dissent.